Opinion to: SJR TGT SN TJ EVK ERA GCH LCH JB









Opinion Issued December
15, 2005
 













 

     

 

 

 

 

 

 

 

 

 

 

In The

Court of Appeals

For The

First District of Texas

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



NO. 01-04-01182-CR

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



KARLTON KEITH JACKSON, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 

 



On Appeal from the 178th District Court

Harris County, Texas

Trial Court Cause No. 963247

 








 



MEMORANDUM OPINION

          Appellant
Karlton Jackson was charged with murder, and convicted by a jury of the
lesser-included offense of manslaughter. 
The jury assessed punishment at eight years in the Texas Department of
Criminal Justice, Institutional Division. 
On appeal, with respect to the guilt-innocence phase of the trial, Jackson
contends the trial court erred in admitting evidence of the victim’s character
for peacefulness.  With respect to the
punishment phase of the trial, Jackson contends that the trial court erred in (1)
admitting evidence of the details of a prior conviction alleged for
enhancement; (2) failing to grant a mistrial after sustaining his objection
that the victim’s criminal history was outside the record; (3) overruling his
objection that the State’s argument that Jackson illegally carried a gun for
ten years was outside the record; and (4) allowing the State to argue that the
jury’s verdict could teach people not to take the law into their own hands.  We affirm.

Facts

          In
September 2003, Jackson became romantically involved with Carol McTear, a
resident of the apartment complex where he worked.  One night while Jackson was staying with
McTear, Alton Jones, McTear’s ex-boyfriend and the father of her child, banged
on the door and window of the apartment in an attempt to visit with his
son.  Jones left when no one answered the
door.  Jones returned and knocked on the
door the next morning, but left when no one responded to his knocking, and
returned again a short while later.  This
time when no one answered the door, Jones drove his car to a nearby spot and
waited.  Shortly thereafter a gunshot was
heard, and Jones’s car was seen speeding down the road, veering off the side of
the road, jumping several retaining blocks, and landing in a culvert.   

          Jackson
testified that, after he left McTear’s apartment to start his morning duties,
Jones drove up to him and started cursing and making threats.  Jackson told his boss that Jones scared him
by following him in the car, so Jackson decided to scare him back by running up
to Jones’s car wielding a gun.  Jackson
testified that Jones told him he and McTear were “going to get it,” so Jackson
pulled out his gun to club Jones in the face with it.  Jackson reached his hand into the car door
toward Jones’s head and Jones accelerated the car, hitting the gun and causing
it to go off.  Jackson told a coworker he
thought he killed Jones.  Jackson was also
seen sweeping up an empty cartridge casing in the area where the shooting
occurred.  The day after the shooting,
Jackson’s brother took a gun Jackson had given him to the police.  A firearms examiner established that the gun
had fired the deadly shot.

Analysis

A. 
Admission of Evidence

In his first and fifth issues,
Jackson contends the trial court erred in admitting (1) evidence of the
victim’s character for peacefulness at the guilt-innocence phase of trial, and
(2) evidence of the details of Jackson’s prior conviction alleged for
enhancement purposes.  We review a trial
court’s decision to admit or exclude such evidence under an abuse-of-discretion
standard and will not reverse a trial court’s ruling unless it falls outside
the zone of reasonable disagreement.  Torres
v. State, 71 S.W.3d 758, 760 (Tex. Crim. App. 2002); McRae v. State,
152 S.W.3d 739, 742 (Tex. App.—Houston [1st Dist.] 2004, pet. ref’d).  A trial court’s ruling will be upheld if
reasonably supported by the record and correct on any theory of law applicable
to the case.  Willover v. State,
70 S.W.3d 841, 845 (Tex. Crim. App. 2002). 


Victim’s Character for Peacefulness

          In
his first issue, Jackson contends the trial court erred in allowing the State
to present, during its case-in-chief, evidence of the victim’s character for
peacefulness.  During direct examination
by the State of McTear’s sister, Brenda Johnson, the following occurred:

STATE:       Did
you have an opportunity to observe [the victim’s] reputation for peacefulness?

 

JOHNSON: Right.
Yes, I have.

 

DEFENSE:  Judge,
may we approach the bench?

 

COURT:     Yes.

 

                   (At
the Bench, on the record)

 

DEFENSE:  Since
when is the victim’s reputation admissible?  I object to it.

 

COURT:     You
made an issue about—you made an issue about the guy’s   character this morning.

 

DEFENSE:  Those
were not character, those were just facts.

 

So, the record is clear, I object to the character
evidence, good character evidence about the victim being admitted in this
trial.

 

          COURT:     Overruled.

 

                             (Open
court, defendant and jury present)

 

STATE:       Okay,
Ms. Johnson, I just asked you if you were familiar with [the victim’s], your former
brother-in-law, reputation in the community for peacefulness?

 

JOHNSON: He was a
nonviolent man.

 

STATE:       Okay.

 

JOHNSON: He
wouldn’t hurt a fly.

 

Jackson contends the trial court
abused its discretion in overruling his objection to admission of this
testimony.

The State responds that Jackson opened
the door to such evidence by attempting to establish the victim’s character for
violence during cross-examination of an earlier witness.  Prior to the State calling Johnson to testify
that the victim had a peaceful character, Jackson cross-examined Sergeant John Swaim
regarding statements made to him by Jackson’s girlfriend, McTear.

DEFENSE:  And
isn’t it true that Ms. McTear told you that [the victim] had been harassing
her?

 

SWAIM:      That’s
correct.

 

. . . .

 

DEFENSE:  And
that on prior occasions he had come over there and would bang on the front door
and windows and demanded entry into the apartment?

 

SWAIM:      That’s
correct.

 

DEFENSE:  Did she
tell you that that had occurred [the morning of the victim’s death]?

 

SWAIM:      She
said someone had came [sic] and banged on her window that morning, and she
assumed it was the complainant but she didn’t get up to see who it was. 

 

Swaim also testified that Jones
knocked twice on the door, drove to another area, parked, and waited for about
an hour and a half.  Swaim testified that
Jones chose not to leave, instead waiting for Jackson to leave the apartment in
order to confront him.

In homicide cases, the State may
present evidence of the peaceful character of the victim to rebut evidence that
the victim was the first aggressor.  Tex. R. Evid. 404(a)(2).  The State may not offer such evidence,
however, until the defendant has opened the door by himself presenting or
eliciting evidence that the victim had a violent character.  Arthur v. State, 339 S.W.2d 538, 539
(1960); see also Mack v. State, 928 S.W.2d 219, 225 (Tex. App.—Austin
1996, pet. ref’d) (stating Rule 404 “clearly provides that evidence of the
victim’s peaceful character may only be offered in rebuttal to defense evidence
that the victim was the first aggressor”). 


Here, by eliciting testimony from
Swaim that the victim was banging on the window harassing Jackson’s girlfriend,
both on the morning of his death and on prior occasions, Jackson opened the
door to testimony regarding the victim’s character for peacefulness.  See Higgins v. State, 924 S.W.2d 739,
745 (Tex. App.—Texarkana 1996, pet. ref’d) (holding, in prosecution for
murdering his wife, defendant opened door to testimony concerning wife’s
peaceful character by eliciting testimony that wife had acted violently on
other occasions, including testimony that she previously “got into it” with her
brother, that she was ‘fighting back’ during fight with defendant on day of
murder, and that she was not meek, but was full of energy).  The trial court was within the zone of
reasonable disagreement in determining that Johnson’s testimony was a proper
rebuttal to Jackson’s cross-examination of Swaim concerning the victim’s
violent character.  The trial court did
not abuse its discretion; thus, we overrule Jackson’s first issue.

 

Details of Prior Conviction Elicited
at Punishment

In his fifth issue, Jackson contends
the State improperly questioned him regarding the details of a prior conviction
alleged for enhancement purposes.  During
the punishment phase of the trial, the State questioned Jackson as follows:

STATE:       Mr.
Jackson, you said that when you got picked up it was for one rock of crack
cocaine; is that correct[?]

 

JACKSON:  Yes.

 

STATE:       Did
you have a crack cocaine addiction at the time?

 

JACKSON:  No.

 

STATE:       Did
you use crack cocaine?

 

JACKSON:  No.

 

STATE:       You
just got picked up with crack cocaine?

 

JACKSON:  Yes.

 

STATE:       And
have you ever used crack cocaine?

 

JACKSON:  No.

 

STATE:       Okay.
So on your [penitentiary] packet when it says you tested positive for cocaine,
that’s not correct?

 

DEFENSE:  Judge,
it does not say he tested positive.

 

JACKSON:  No,
they never tested me.

 

DEFENSE:  Excuse
me, Judge. The [penitentiary] packet does not say he ever tested positive for
cocaine.

 

COURT:     I’ll
overrule the objection.  I’ll give you a
chance to redirect.

 

DEFENSE:  The
question assumes facts not in evidence. It says not avoiding injurious or
vicious habits.

 

STATE:       He
failed to avoid use of narcotics or habit forming drugs.

 

DEFENSE:  It does
not say he tested positive for crack cocaine.  I also object to her going into the details of
the prior conviction.

 

COURT:     Overruled.

 

On appeal, Jackson’s argument focuses
on the discussion of the details of the prior conviction, not on whether
Jackson ever tested positive for drugs.

After a defendant has been found
guilty, evidence may be offered by the State and the defendant “as to any matter
the court deems relevant to sentencing,” including evidence of other crimes or
bad acts.  Tex. Code Crim. Proc. Ann. art. 37.07 § 3(a)(1) (Vernon Supp.
2005); Flores v. State, 125 S.W.3d 744, 746 (Tex. App.—Houston [1st Dist.]
2003, no pet.).  A trial court has broad
discretion in determining the admissibility of evidence presented at the
punishment phase of trial.  Henderson
v. State, 29 S.W.3d 616, 626 (Tex. App.—Houston [1st Dist.] 2000, pet. ref’d).  Though Jackson contends it is well settled
that a prosecutor cannot introduce the details of a prior conviction for
enhancement purposes, the Texas Court of Criminal Appeals held the exact
opposite in Davis v. State, 968 S.W.2d 368 (Tex. Crim. App. 1998).  In Davis, the court held that “Article
37.07 allows the details of any bad act to be considered during
sentencing.”  Id. at 373.  Accordingly, the trial court did not abuse
its discretion in allowing the State to question Jackson concerning the details
of his prior conviction, and Jackson’s fifth issue is overruled.

B. 
State’s Closing Argument at Punishment

          In
his second, third, and fourth issues, Jackson contends the State made improper
arguments during its closing in the punishment phase of trial.  Specifically, Jackson contends the trial
court erred in (1) failing to grant a mistrial after sustaining his objection
that the State’s argument that the victim had never been arrested was outside
the record, (2) overruling his objection that the State’s argument that Jackson
illegally carried a gun for ten years was outside the record, and (3) allowing
the State to argue that the jury’s verdict could teach people not to take the
law into their own hands. 

          Proper
jury argument is limited to (1) summation of the evidence presented at trial,
(2) reasonable deductions from that evidence, (3) answers to opposing counsel’s
argument, and (4) pleas for law enforcement. 
Jackson v. State, 17 S.W.3d 664, 673 (Tex. Crim. App. 2000); Swarb
v. State, 125 S.W.3d 672, 685 (Tex. App.—Houston [1st Dist.] 2003, pet.
dism’d).  To determine whether a party’s
argument properly falls within one of these categories, we must consider the
argument in light of the entire record.  Swarb,
125 S.W.3d at 685.  “To constitute
reversible error, the argument must be manifestly improper or inject new,
harmful facts into the case.”  Jackson,
17 S.W.3d at 673.  We review the
complained of argument accordingly.

          Stating
the Victim Had Never Been Arrested

          During
closing at the punishment phase, the State argued to the jury that the victim
had never been known to carry a weapon, and had “never been arrested for
anything.”  Jackson objected that the
statement was outside the record, and the trial court instructed the jury to
disregard it.  Jackson then moved for a
mistrial, which the trial court denied.  In
most cases, an instruction to the jury to disregard improper jury argument
cures any error.  Shannon v. State,
942 S.W.2d 591, 597–98 (Tex. Crim. App. 1996). 
We may presume that the jury obeyed the trial court’s instructions to
disregard, and reversal
is appropriate only if the comment is so offensive or flagrant as to make the
instruction ineffective.  Wesbrook v.
State, 29 S.W.3d 103, 116 (Tex. Crim. App. 2000).  Here, Jackson presented ample evidence that
the victim was an unsavory character—addicted to drugs, suffering from AIDS,
and constantly harassing Jackson’s girlfriend. 
This evidence coupled with the trial court’s instruction to the jury to
disregard the State’s improper comment makes it unlikely that the comment
affected the jury’s decision.  The
comment was not so offensive or flagrant as to make the instruction
ineffective.  See id.  Accordingly, we conclude the trial court did
not err in failing to grant a mistrial, and we overrule Jackson’s second issue.

          Stating
Jackson Illegally Carried a Gun for Ten Years

          Also
during the State’s closing at punishment, the following occurred:

          STATE:       Since 1994 [Jackson] has been carrying a
weapon unlawfully. Goes and buys a weapon from a guy in Navasota, has this
weapon for ten years, and uses this weapon, okay?

 

DEFENSE:  Judge,
we don’t want—the fact he has been carrying a weapon for ten years is outside
the record.  I object to it.

 

COURT:     Overruled.

 

STATE:       He
said he bought it in 1994.

 

DEFENSE:  It was
legal for him to possess it in his house. 
I object to her saying he’s been violating the law for ten years.

 

COURT:     Overruled.

 

On appeal, Jackson argues that it is
outside the record whether he unlawfully carried a weapon for ten years, and
that the trial court erred in overruling his objections.[1]  Jackson testified that he purchased a weapon
from someone in Navasota in 1995 and that he carried it with him when he was
on-call at his job.  He also admitted
that he knew it was unlawful for him to have the weapon.  The State’s argument that Jackson was
unlawfully carrying the weapon ever since he bought it is a reasonable summary
of, and deduction from, the evidence. 
Though the time period of ten years somewhat overstates how long he had
been carrying the weapon, Jackson’s argument both at trial and on appeal
focuses on the illegality of the possession, not the time period involved, and
Jackson’s testimony that he carried the gun illegally places the State’s
argument within the limits of a proper jury argument as a summation of the
evidence presented at trial.  See
Jackson, 17 S.W.3d at 676. 
Accordingly, we conclude the trial court did not err in overruling
Jackson’s objection, and we overrule his third issue.

          Appeal
to Jury to Teach People a Lesson

          Jackson complains that the trial
court erred in allowing the State to argue in closing at the punishment phase
that “[y]our verdict can affect how other people perceive what happens when you
unlawfully arm yourself and your verdict can teach people to not just take the
law into their own hands and picking [sic] people off who they don’t get along
with.”  Jackson contends this statement
was an attempt to convince the jury to assess punishment based on the
expectations of the community, and thus falls outside the four permissible
categories of jury argument.  See
Cortez v. State, 683 S.W.2d 419, 420 (Tex. Crim. App. 1984) (holding asking
jury to assess punishment because community desires it is improper).  Jackson did not object to the State’s
comment concerning teaching people a lesson at trial.  A defendant’s failure to object to allegedly
improper jury argument waives any complaint on appeal.  Cockrell v. State, 933 S.W.2d 73, 89
(Tex. Crim. App. 1996).  Because Jackson
has not preserved error, we overrule his fourth issue.

Conclusion

          We
hold (1) the trial court did not abuse its discretion in allowing evidence of
the victim’s peaceful character because Jackson opened the door by questioning
a State’s witness concerning the victim’s violent character; (2) the details of
Jackson’s prior conviction were properly admitted at the punishment phase of
the trial; (3) the trial court did not err in refusing to grant a mistrial
after it instructed the jury to disregard a comment outside the record
concerning the victim’s criminal record; (4) the trial court did not err in
allowing the State to argue at punishment that Jackson illegally carried a
weapon for ten years because the argument was a proper deduction from the
evidence; and (5) Jackson waived his argument that the State made an improper
appeal to community desires in closing because he failed to object at
trial.  We therefore affirm the judgment
of the trial court.  Any pending motions
are denied as moot.

          

                                                          Jane
Bland

                                                          Justice

 

Panel consists of Chief Justice
Radack and Justices Alcala and Bland.

Do not publish.  Tex.
R. App. P. 47.2(b).











[1] The Texas Penal Code provides that it is unlawful for
a person convicted of a felony to possess a firearm within five years of the
date of his release from confinement or supervision.  Tex.
Pen. Code Ann. § 46.04 (a) (Vernon Supp. 2005).